IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

WILBERT M. SEWELL,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.                                                 Case No. 06-cv-686-DRH

**MEMORANDUM & ORDER**

**HERNDON, Chief Judge:**

## I. INTRODUCTION

Now before the Court is petitioner Wilbert M. Sewell's Motion to Vacate, Set Aside, or Correct Sentence, pursuant to **28 U.S.C. § 2255**, and his supporting memorandum. (Docs. 1 & 3.) Respondent United States of America opposes the motion. (Doc. 7.) Sewell filed a Reply. (Doc. 10.) For the reasons discussed herein, the Court denies Sewell's Motion.

On September 25, 2004, security guards for the Club Casino in East Saint Louis, Illinois, observed Sewell stuff what appeared to be a handgun down the front of his pants. (Case No. 3:05-cr-30059-DRH, Stipulation of Facts, Doc. 21, p.1.) When the guards attempted to apprehend Sewell, he fled. During the chase, Sewell tossed the firearm into a weeded area. He was apprehended shortly thereafter. The firearm was recovered from the weeded area; subsequently, law enforcement

determined that the firearm had been reported stolen. (*Id.*) During his arrest, Sewell was uncooperative with law enforcement officials, providing them with false identities in an attempt to avoid arrest. (*See id.,* Presentence Investigation Report, Doc. 27, p.7.) His evasive conduct ultimately resulted in a conviction in the state of Illinois for obstruction of justice, entered on December 6, 2004. (*Id.*) Because Sewell had a prior felony conviction,[1] he was also charged with the federal crime of being a felon in possession of a firearm under **18 U.S.C. § 922(g)(1)**. (*See id.,* Indictment, Doc. 1.) Sewell pled guilty to the federal charge and was sentenced to 46 months imprisonment on September 6, 2005. (*Id.,* Judgment, Doc. 29.) He did not directly appeal. Sewell now attacks his federal sentence, arguing that his state sentence for obstruction of justice should have been credited to his federal sentence. (Case No. 06-686, supporting memorandum, Doc. 3, p.1.)

## II. **DISCUSSION**

A.  **28 U.S.C. § 2255**

Sewell petitions the Court for relief under **28 U.S.C. § 2255**, which provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . or that the sentence was in excess of the maximum authorized by law . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.

---

[1] Sewell had an Illinois state felony conviction for reckless homicide in 2001. (Case No. 3:05-cr-30059-DRH, Stipulation of Facts, Doc. 21, p. 2.)

Sewell seeks relief based upon two grounds. He asserts that he is entitled to appeal his sentence directly to the Seventh Circuit because his attorney's failure to file an appeal regarding proper application of the sentencing guidelines deprived him of his Sixth Amendment right to effective assistance of counsel. The underlying basis for his ineffective assistance of counsel claim also serves as the other basis for his petition. first asks the Court to reconsider his sentence because he alleges it deviates from the Federal Sentencing Guidelines.

**Section 2255** provides an extraordinary remedy reserved to correct a narrow subset of judicial error. Generally speaking, a **§ 2255** proceeding may not provide backdoor access for making the kind of garden variety arguments which could have—but were not—made on direct appeal. ***See Arias v. United States*, 484 F.2d 577, 579 (7th Cir. 1973) (error which would require reversal on direct appeal is not reviewable on § 2255 motion unless the error is constitutional or jurisdictional in character);** *Belford v. United States*, **975 F.2d 310, 313 (7th Cir. 1992) ("nonconstitutional issues that could have been but were not raised on direct appeal" are not reviewable on § 2255 motion")**. Moreover, the Seventh Circuit has specifically held that errors in the determination of a sentence (without more) are not the proper subject matter of **§ 2255** review. ***See Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996) ("relief under 28 U.S.C. § 2255 is reserved for extraordinary situations . . . [it] is rarely if ever the proper vehicle by which to challenge the application of a Sentencing Guideline provision where**

**the sentence has become final and the petitioner did not directly appeal the issue"); *United States v. Wisch*, 275 F.3d 620, 625 (7th Cir. 2001) ("Allegations that the district judge misapplied the sentencing guidelines are not reviewable under § 2255.")**. However, certain constitutional claims are allowed whether or not they were made on direct appeal:

> Although nonconstitutional issues cannot serve as an independent basis for section 2255 relief, the fact that the nonconstitutional issues were not raised on direct appeal can be used as evidence of ineffective assistance of counsel. Ineffective assistance of counsel, because it is a constitutional issue, can in turn serve as a valid basis for section 2255 relief.

*Belford,* **975 F.2d at 313, n.1**.

On its own, Sewell's claim that his sentence was improperly calculated under the Guidelines is not cognizable under **§ 2255**. Thus, this Motion presents the singular question of whether the failure of Sewell's attorney to file a direct appeal constitutes ineffective assistance of counsel.

**B.     Analysis**

   **1.     Ineffective Assistance of Counsel *Per Se***

The paradigmatic case on ineffective assistance of counsel claims is **Strickland v. Washington, 466 U.S. 668 (1984)**. In **Strickland**, the Supreme Court established a two prong test for determining whether one's assistance of counsel has been constitutionally deficient under the Sixth Amendment: first, counsel must be shown to have acted unreasonably according to "prevailing professional norms." *Id.* **at 688**. If so, it must then be shown that the errors were

prejudicial to the **§ 2255** Petitioner. *Id.* at 691. In other words, "that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Bell v. Cone*, 535 U.S. 685, 694 (2002)(quoting *Strickland*, 466 U.S. at 688, 694); *see also Davis v. Lambert*, 388 F.3d 1052, 1059 (2004)(citing *Strickland*, 466 U.S. at 688, 694). While ordinary trial blunders are reviewed according to this dual test of reasonableness and prejudice, an attorney's failure to file an appeal is treated according to a somewhat more compressed analysis.

In *Castellanos v. United States*, 26 F.3d 717, 720 (7th Cir. 1994), the Seventh Circuit announced a rule that an attorney's failure to file an appeal (if requested to do so by the client) is inherently prejudicial. In such a circumstance the probability of success on appeal is irrelevant and need not be determined for the purposes of evaluating an ineffective assistance claim. *Id.* Generally, *Castellanos* stands for the proposition that failure to follow a client's request to file an appeal results in constitutionally ineffective assistance of counsel *per* se, as it effectively amounts to attorney abandonment. *Castellanos*, 26 F.3d at 718. *See also Bradley v. United States*, 219 Fed. Appx. 587, 589 (7th Cir. 2007); *Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000) (if, "but for counsel's deficient performance, [her client] would have appealed," *Strickland* prejudice is shown).

The essential issue raised by any *Castellanos* claim is whether the petitioner's counsel was actually instructed to appeal. *See Castellanos*, 26 F.3d

at 719 ("'Request' is an important ingredient in this formula. A lawyer need not appeal unless the client wants to pursue that avenue."). In *Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 2006), the district court had dismissed a the petitioner's ineffective assistance claim as well as his request for an evidentiary hearing, finding that the allegations of whether he had told his counsel to appeal were vague and unsubstantiated. *Id.* at 1066-67 (noting that the district court expected the petitioner to "com[e] forth with evidence that he had expressed his desire to appeal."). Reviewing the district court's denial of the hearing on an abuse of discretion standard, the Seventh Circuit affirmed, holding that conclusory allegations without more are insufficient to make an ineffective assistance of counsel claim. *Id.* Specifically, the court found the absence of supporting affidavits to be fatal. *Id.* at 1068 ("'[i]t is the rule of this Court that in order for a hearing to be granted, the petition must be accompanied by a detailed and specific affidavit which shows that the petitioner had actual proof of the allegations going beyond mere unsupported assertions.'") (quoting *Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir. 1996)). *See also Galbraith v. United States*, 313 F.3d 1001, 1009 (7th Cir. 2002) (affirming the dismissal of an ineffective assistance claim where the defendant "present[ed] no affidavit from himself or his trial counsel supporting his version of his attorney's conduct, nor any other available, probative evidence that would effectively support [his] claim.").

Thus, in determining whether Sewell's request for relief from ineffective assistance of counsel should be granted, the Court looks to the proof he offers in order to determine whether his claims warrant further consideration of his claim, including a hearing. Sewell indicates that his counsel "fail[ed] to take an appeal after petitioner had indicated to counsel that he did in fact want to appeal." (Memorandum in Support, Doc. 3, p. 2.) He subsequently reiterated this assertion in his Reply, stating that "petitioner understood that he had the right to appeal, and requested that an appeal be filed." (Doc. 10, p. 4.) However, under ***Kafo***, the critical question is whether there are accompanying sworn statements which bolster Sewell's allegations that his counsel failed to heed his expressed desire to appeal. Turning to the affidavit filed with his **§ 2255** Petition, it is apparent that Sewell's claim of ineffective assistance of counsel is factually unsupported. His affidavit states, "After the district court imposed sentence counsel asked affiant if I wanted to appeal, and I specifically stated to counsel that I thought the sentence was unfair and that *if counsel thought a[n] appeal was warranted* that a[n] appeal should be filed on my behalf." (Sewell Affidavit, Doc. 3.) (Emphasis added.) Thus, it appears Sewell and his attorney discussed the possibility of an appeal, but that Sewell left it to his counsel's discretion as to whether an appeal was warranted. Therefore, Sewell's own sworn testimony undermines—rather than substantiates—his strident contention that he explicitly instructed her to file an appeal and she failed to do so.

Moreover, as part of its Response, the Government provides an affidavit from Sewell's trial counsel, Renee E. Schooley. Therein she states:

> I do not recall and my file does not reflect that Mr. Sewell ever requested that I file an appeal of his sentence. It is my practice and I am required to file a Notice of Appeal if the client requests and I do so even if I do not feel that the appeal has merit.

(Schooley Affidavit, Doc. 7, Ex. A ¶ 3.) While Ms. Schooley declines to affirmatively state that she was never instructed to file an appeal, the clear implication of her testimony is that Sewell made no such request.

Under *Castellanos*, a defendant must offer proof that a request for an appeal was affirmatively made to his counsel in order to state a claim of *per se* ineffective assistance. Taken as a whole, while the Court finds that the testimony offered on this Motion indicates the possibility that an appeal *may* have been discussed, it is apparent that Sewell did not explicitly instruct his attorney to file an appeal. In the absence of such a command, Sewell cannot show that his counsel's failure to file an appeal constitutes ineffective assistance *per se*. Thus, the Court must next examine whether ineffective assistance of counsel is established under ***Strickland***.

### 2. Ineffective Assistance of Counsel Under *Strickland*

#### a. The *Strickland* Standard

Prejudice is shown as a matter of law when an attorney fails to heed her client's order to file an appeal. It is unnecessary, then, to determine whether the appeal would have been successful in order to bring an ineffective assistance of counsel claim for failure to file an appeal. ***Castellanos, 26 F.3d at 720***. However, where, as here, a litigant follows his lawyer's advice, or leaves important decisions

to her discretion, such advice and discretion are reviewed according to the familiar ***Strickland*** standard. ***See Ruvalcaba v. United States*, 111 F.3d 133 (Table), 1997 WL 187398, \*3 (7th Cir. 1997)**.

As noted above, under ***Strickland***, an ineffective assistance of counsel claim must ordinarily satisfy a two-part test: a showing of professionally unreasonable conduct coupled with a showing of prejudice. **466 U.S. at 688, 691**. In a case such as this, the ***Strickland*** inquiry collapses into an analysis of the merits of the underlying claim. In other words, if Sewell's allegation of error is baseless, this conclusion indicates that no error was committed and, ergo, no prejudice is suffered by his counsel's failure to raise the putative issue. Furthermore, it is not professionally unreasonable for an attorney vested with the discretion to decide whether or not to appeal to decline to prosecute a meritless claim. Thus, in the absence of an affirmative request to appeal, an attorney's decision not to pursue a frivolous claim on appeal does not amount to ineffective assistance *per se*.

### b. The Propriety of Sewell's Sentence

The crux of Sewell's claim is that his counsel failed to appeal regarding the issue of whether his state sentence for his obstruction of justice conviction should have been credited as time served in determining the federal sentence for his felony possession charge. Like his federal felon-in-possession conviction, the state crime arose from the events of September 25, 2004. Sewell argues that the two offenses are related, and that, therefore, under **U.S.S.G. § 5G1.3(b)**, his federal

sentence should credit his time served under his state sentence. He does not specifically challenge the offense level or criminal history category calculations which led to his sentencing term of 46 months. However, because the calculation of his sentence is relevant to the application of **§ 5G1.3(b)**, a brief review is warranted.

To start, Sewell's conviction as a felon in possession of a firearm under **18 U.S.C. § 922(g)(1)**—predicated on a prior reckless homicide felony conviction—resulted in a base offense level of 20 pursuant to **United States Sentencing Guidelines ("U.S.S.G.") § 2K2.1(a)(4)(A)**. Because Sewell was in possession of a stolen firearm, two points were added, equaling 22 points. **U.S.S.G. § 2K2.1(b)(4)**. His acceptance of responsibility resulted in a 3-point reduction under **§ 3E1.1(a), (b)**, bringing the final total back down to 19 points. Sewell's sentence was ultimately based on an offense level of 19—no other enhancements or adjustments were made under Chapters 2 or 3 of the Guidelines. Importantly, the Presentence Investigation Report ("PSR"), indicates that no points were added for obstruction of justice. Sewell's criminal history category fell under a Category "IV."[2] Under **§ 5A**, this results in a range of imprisonment of 46 – 57 months. Sewell received the lowest possible sentence in this range.

---

[2] Sewell's initial criminal history point total equaled 9. This included two points for the obstruction of justice charge. However, Sewell's attorney successfully argued that this was improper, and the total history points were reduced to 7. But because a criminal history category of "IV" results from a point total of anywhere from 7 to 9, this correction was for accuracy's sake only and did not reduce his sentence range under the Guidelines.

**Section 5G1.3(b)** provides for credit to be given for a pre-existing sentence if:

> [The prior] term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct) *and* that was the basis for an increase in the offense level for the instant offense under Chapter Two (Offense Conduct) or Chapter Three (Adjustments).

**U.S.S.G. § 5G1.3(b) (emphasis added)**.

**Section 5G1.3(b)** establishes a two-part test which Sewell must satisfy. In order to get credit for his state obstruction of justice sentence, Sewell must show: (1) that it is relevant conduct to his federal offense of conviction *and* (2) that it provided the basis for an increase in his offense level under Chapters 2 or 3. During his sentencing on his federal conviction for being a felon in possession of a firearm, the Court found that the state obstruction of justice charge was not "relevant conduct" under **U.S.S.G. § 1.B1.3**. However, regardless of whether the state charge amounted to "relevant conduct" for the federal charge, it is clear that, as a matter of law, Sewell cannot satisfy the second prong under **§ 5G1.3(b)**.

As explained above, Sewell received no upward adjustments under Chapter 3 whatsoever, and his only points under Chapter 2 resulted from the bare fact that he possessed a stolen firearm. Indeed, the PSR specifically indicates that Sewell received no adjustment for obstruction of justice. The absence of any Chapter 2 or Chapter 3 enhancements resulting from Sewell's obstruction of justice offense is dispositive of his **§ 5G1.3(b)** claim, causing it to fail. Because Sewell cannot show

that his state obstruction of justice charge was a basis for an increase in the offense level for his federal sentence under **§ 5G1.3(b)**, his argument that his federal sentence improperly fails to account for his state sentence is without merit. As such, Sewell's counsel was not unconstitutionally ineffective for declining to appeal this issue. It was not unreasonable for counsel to exercise her discretion in declining to appeal an issue that had little merit.[3] Even assuming, *arguendo*, that counsel's election not to appeal was unreasonable, Sewell can not establish that counsel's decision worked to his prejudice, as the Court finds the law does not favor the likelihood of success had counsel appealed. In sum, the failure of Sewell's ineffective assistance of counsel claim is thereby fatal to his **§ 2255** Petition.

      Sewell also asserts that the Court did not properly consider certain relevant factors, pursuant to **18 U.S.C. § 3553(a)**, when fashioning his sentence. It appears as though Sewell believes failure to account for the time served for his state conviction of obstruction of justice created an "unwarranted disparity" in his federal sentence; that his sentence far exceeded his crime, so to speak. During sentencing, the Court noted that Sewell's prior state felony for reckless was "an extraordinarily serious bit of criminal history." (Case 05-30059, Doc. 31, Sentencing Transcript, 17:1-2.) The Court stated that although Sewell "says all the rights things," in expressing his remorse and affirmation to avoid future wrongdoings, it found his

---

[3] **§ 5G1.3**, in fact, goes on to provide, as a policy statement:
> In any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.

sentiment "inconsistent with the actions of a person who's on parole and then picks up a gun and carries a gun when he is trying to, or should be trying to do everything he can to obey the law and work his way back into society in a productive way." (*Id.* at 17:21 & 18:3-7.) The length of Sewell's sentence was necessary "because even though he's done prison time for other crimes and was on parole, being watched, he still commits a violation of the law which shows a certain disrespect for the law which we need to take hold of. We need to deter criminal conduct in the future." (*Id.* at 18:14-19.) Additionally, the Court found there was opportunity for Sewell to receive further beneficial education while incarcerated. Thus, on the record, the Court properly considered the **§ 3553(a)** factors in determining Sewell's sentence. It did not chose to depart from the Guideline recommendations. Upon review, the Court stands by its prior reasoning and the issued sentence. Therefore, Sewell's argument in this regard is not well-taken.

### III. CONCLUSION

For the foregoing reasons, the Court **DENIES** petitioner Wilbert M. Sewell's Motion to Vacate, Set Aside, or Correct Sentence. (Doc. 1.)

**IT IS SO ORDERED**.

Signed this 5th day of December, 2007.

/s/    *David R Herndon*

**Chief Judge**
**United States District Court**